# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JEFFREY A. GEER, et al. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-1109-JTM |
| ) | |
| CHALLENGE FINANCIAL ) | |
| INVESTORS CORPORATION d/b/a ) | |
| CFIC HOME MORTGAGE and ) | |
| CHALLENGE MORTGAGE, et al. ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Before the Court is Plaintiff's Motion to Facilitate and Expedite Section 216(b) Notice.[1] (Doc. 3.) Plaintiffs seek an order requiring Defendants to provide the name, last known address, and telephone number of each loan officer employed by Challenge Financial Investors Corp. ("CFIC") at any time from April 20, 2002 to the present, and an order authorizing Plaintiffs to send notice of this action to all such employees. Defendant responded (Doc. 7), opposing any such orders as

---

[1] After this motion was filed, Plaintiff Gerald LaBouff joined the case as an opt-in plaintiff. Thus, the title of the motion contains a singular possessive "Plaintiff's" when in fact, the case now has two Plaintiffs. The remainder of this Order will use the plural "Plaintiffs" when referring to the moving parties.

inappropriate in this case. Plaintiffs filed a reply. (Doc. 13.)[2]

## BACKGROUND

Plaintiff Geer, on his behalf and on behalf of similarly situated current and former CFIC employees, sued CFIC for violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and the Kansas Wage Payment Act, K.S.A. 44-312 *et seq*. Plaintiff LaBouff, joined the case as an opt-in Plaintiff on June 17, 2005. Plaintiffs, former loan officers for CFIC, allege that they and other CFIC loan officers were not paid minimum wage or overtime as required by law. Under CFIC's commission-only pay system, Plaintiffs allege that they and other loan officers were not paid any wages for weeks where they did not close any loans and were paid inadequately for other weeks. Defendants state that CFIC's loan officers are "outside salesmen" exempt from the minimum wage and overtime provisions of the FLSA. 29 U.S.C. § 213(a)(1).

Plaintiffs now seek to expedite and facilitate notice to allegedly similarly situated current and former CFIC loan officers pursuant to the FLSA. 29 U.S.C. § 216(b).

---

[2] After briefs concerning this motion were filed, counsel asked the Court to withhold ruling until they had an opportunity to discuss resolution of certain matters. The Court now understands that no agreements have been reached by the parties and they seek a ruling on the pending motion.

## DISCUSSION

29 U.S.C. § 216(b) provides:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

The key inquiry is whether the opt-in plaintiffs are "similarly situated." The Tenth Circuit has adopted the *ad hoc* method for determining whether plaintiffs are similarly situated under § 216(b). **Thiessen v. GE Capital Corp.**, 267 F.3d 1095, 1105 (10th Cir. 2001). Under this approach, the Court utilizes a two step process. At the initial "notice stage," the Court determines whether a collective action should be certified for purposes of sending notice of the action to potential opt-in plaintiffs. **Brown v. Money Tree Mortgage, Inc.**, 222 F.R.D. 676, 679 (D. Kan. 2004). At this stage, the court requires only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." **Thiessen**, 267 F.3d at 1102 (citations and quotations omitted). The standard for certification at the notice stage is a lenient one that usually results in

class certification.  *Money Tree*, 222 F.R.D. at 679.

At the conclusion of discovery (generally prompted by a motion to decertify), the court makes a second determination, utilizing a stricter standard of "similarly situated" and relying upon general principles of judicial economy and fairness.  ***Bayles v. American Medical Response of Colorado, Inc.***, 950 F. Supp. 1053, 1066 (D. Colo. 1996).  During this analysis, the court reviews several factors, including (1) disparate factual and employment settings of plaintiffs, (2) various defenses available to defendants that appear to be individual to each plaintiff, (3) fairness and procedural considerations.  *Money Tree*, 22 F.R.D. at 679.

This case is clearly at the notice stage.  Therefore, the only issue before the Court is whether Plaintiffs have made substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.  In considering this issue, the Court will review Plaintiffs' allegations contained in the Complaint and the various affidavits filed by Plaintiffs.  *Id.*

Defendants do not challenge Plaintiff's assertion that CFIC used the same compensation policy, *i.e.*, commission-only salary, for all of its loan officers at all of its branch offices.  Defendants do, however, claim that conditional certification is not proper in this case because (1) CFIC's current and former loan officers are

not similarly situated with respect to their exempt status and (2) the size of the potential class makes it unmanageable.

### A.    SIMILARLY SITUATED

Defendants' primary defense is that its loan officers are exempt from the minimum wage and overtime requirements of the FLSA as "outside salesmen." 29 U.S.C. § 213(a)(1). Department of Labor regulations define "outside salesman" as, among other requirements, one "[w]ho is customarily and regularly engaged away from the employer's place or places of business" in performing his sales duties.[3]

Defendants claim that the putative plaintiffs are not similarly situated because sales methods "vary from branch to branch and among individual loan officers." (Weyburne Aff., Doc. 7, Ex. 1 ¶ 4.) Defendants further contend that much of the loan officers' time is spent outside the office and CFIC does not

---

[3] Plaintiffs note, Doc. 13 at 5, n. 2, that the regulations which define an outside salesman were amended on April 20, 2004, and became effective on August 23, 2004. Plaintiff Geer began his employment with CFIC on January 14, 2005 (Gonzales Aff., Doc. 7, Ex. B ¶ 3), and Plaintiff LaBouff began his employment with CFIC in November 2004 (LaBouff Aff., Doc.13 Ex. 1 ¶ 2). Therefore it appears that questions about whether they were outside salesmen would be governed by the newly amended regulations. 29 C.F.R. § 541.500. Other potential plaintiffs who might opt in may have been employed during the time that the older version of the regulation was in effect. The Court makes no determination at this time as to whether there is any significant difference between the definition of an outside salesmen in the older version of the regulations as compared to the amended version. The quoted language in the text above appears in both versions of the regulations.

require its loan officers to work any specified number of hours or keep a record of such hours.  (Doc. 7 at 3–5.)

In considering whether the putative plaintiffs are similarly situated, the Court will only consider the pleadings and affidavits filed by Plaintiff because, at this point, the Court is not prepared to weigh the evidence.  *See* **Brown v. Money Tree Mortgage, Inc.**, 222 F.R.D. 676, 680 (D. Kan. 2004) (considering only the amended complaint and affidavits submitted by plaintiff in deciding whether to conditionally certify at the notice stage); *see also* **Thiessen v. GE Capital Corp.**, 267 F.3d 1095, (10th Cir. 2001) (reversing the district court's decision to decertify a class at the second stage because the district judge weighed the evidence and made factual findings, which "essentially deprived plaintiffs of their right to have the issues decided by a jury, or at least have the court determine under summary judgment standards, whether there was sufficient evidence to send the issue to the jury"); *but see* **Stubbs v. McDonald's Corp.**, Case No. 03-2093, 2004 WL 3322369, at *5 (D. Kan. Mar. 4, 2004) (considering both plaintiff's and defendants' affidavits and holding that plaintiff's "own speculative allegations" were insufficient to sustain his burden to prove that he and the putative class members were similarly situated where defendant's supporting affidavits were specific and detailed).

Plaintiffs' generally allege that CFIC's loan officers spend the majority of their time working in the office. In support of their allegations Plaintiffs offer their own affidavits and information from CFIC's website.[4]

Plaintiff Geer's affidavits[5] state that he was required to attend work while employed at CFIC's Wichita branch office, and he was once reprimanded for being late. Geer also states that he conducted substantially all of his work at the office, and that other employees of the Wichita branch office worked and were treated similarly.

Plaintiff LaBouff's affidavit states that he had set work hours of 8 a.m. to 5 p.m. while employed by CFIC at its Houston, Texas branch office. LaBouff also states that he and other loan officers at the Houston office spent most of their time in the office pursuing leads that were always provided by CFIC.

Plaintiffs also provided frames from CFIC's website, which state that CFIC

---

[4] Plaintiffs offer the affidavit of Sophie K. Counts, one of their attorneys, verifying the authenticity of the proposed website information. (Counts Aff., Doc. 5, Ex. 1.) Plaintiffs further note that the website information regarding loan officers and branch managers was changed after the filing of this lawsuit, resulting in a reduction in the amount of information available. Plaintiffs' provide the Court with samples from the website before and after the changes. *See* Counts Aff., Doc. 5, Ex. 1-A (CFIC website March 22, 2005) and 1-B (CFIC website May 11, 2005).

[5] Geer provided two affidavits relating to this motion. The first affidavit was attached to the original motion. (Doc. 5, Ex. 2.) The second was attached to Plaintiffs' reply brief. (Doc. 13, Ex. 2.)

"prefer[s] that all of [its] branches operate out of professional office space . . . clearly identified to the public, and staffed and equipped to deal with clients in a business like manner." (Doc. 5, Ex. 1-A at 4.)

CFIC argues that its offices are somewhat autonomous and that loan officers in other branches do not necessarily spend most of their work time in the office. Defendants further argue that this lack of consistency would require the Court and the parties to inquire as to each loan officer's work habits to determine whether he or she is an exempt outside salesperson. In support of its position, CFIC cites several factually similar cases. *See **Clausman v. Nortel Networks, Inc.***, Case No. 02-0400, 2003 WL 21314065, at *4–5 (S.D. Ind. May 1, 2003) (declining to conditionally certify a class because individual nature of the outside salesman exemption would require a separate factual inquiry into each plaintiff's work situation); ***Pfaahler v. Consultants for Architects, Inc.***, Case No. 99-6700, 2000 WL 198888, at *2 (N.D. Ill. Feb. 8, 2000) (holding that certification of a collective action under 216(b) was inappropriate where a fact-intensive inquiry of each potential plaintiff would be required to determine whether he was an exempt independent contractor).

The Court acknowledges that many courts have taken the position that where an individual inquiry will be required to determine whether each plaintiff is exempt

from the FLSA, then the matter is not proper for a collective action under section 216(b).  See **Mike v. Safeco Ins. Co. of America**, 274 F. Supp. 2d 216, 220–221 (D. Conn. 2003) (denying plaintiff's motion for conditional certification because the putative plaintiffs' claims would turn on the application of an exemption that would require a fact-specific inquiry as to each plaintiffs' day-to-day work activities).  However, many courts have also refused to even consider the individualized nature of factual inquiries at the notice stage, holding that such evaluation is not appropriate until the second stage analysis.  See **Pendlebury v. Starbucks Coffee Co.**, Case No. 04-80521, 2005 WL 84500, at *3 (S.D. Fla. Jan 3, 2005) (holding that factual matters regarding the applicability of exemptions to employees is not appropriate at the notice stage); **Leuthold v. Destination America, Inc.**, 224 F.R.D. 462, 467 (N.D. Cal. 2004) (stating that factual determinations regarding disparate factual and employment settings of individual plaintiffs and various defenses available to defendants with respect to the individual plaintiffs are matters for second stage analysis); **Goldman v. RadioShack Corp.**, Case No. 03-0032, 2003 WL 21250571, at *8 (E.D.Pa. April 16, 2003) (stating that plaintiff's exempt status is irrelevant for conditional certification at the notice stage).

      Courts in the Tenth Circuit and the District of Kansas have sided with the

latter group of courts, refusing to consider individual factual issues regarding exemptions at the notice stage.  *See* **Thiessen v. GE Capital Corp.**, 267 F.3d 1095, 1103 (10th Cir. 2001) (stating that disparate factual and employment settings of individual plaintiffs and various defenses available to defendant that are individual to each plaintiff are factors to be considered at the second stage analysis); ***Brown v. Money Tree Mortgage, Inc.***, 222 F.R.D. 676, 682 (D. Kan. 2004) (refusing to consider "legal and factual issues unique to each employee such as whether the employee was an exempt employee" for conditional certification at the notice stage); *see also* **Williams v. Sprint/United Mgmt. Co.**, 222 F.R.D. 483, 487 (D. Kan. 2004) (holding that "differences between and among plaintiff and the opt-ins . . . are simply not relevant at the notice stage when plaintiff . . . has set forth substantial allegations that all plaintiffs were subjected to a pattern and practice of age discrimination").

Plaintiffs' allegations and affidavits are sufficient for this Court to find "substantial allegations" that other loan officers were victims of the same compensation scheme and mis-classification of non-exempt employees as the present party Plaintiffs.

B. MANAGEABLE CLASS

CFIC argues that the potential class of 1300 current and past loan officers is

unmanageable, especially in light of the individualistic nature of each potential plaintiff's claim. The Court disagrees.

The Court has already determined that consideration of any individualized exemptions is inappropriate at this stage. *See supra* Part A. Furthermore, the Court notes that the number of actual opt-in Plaintiffs may not be nearly as great as the number in the potential class. See ***Scott v. Aetna Services, Inc.***, 210 F.R.D. 261, 266 (D. Conn. 2002) (stating in that case 22 of 281, approximately 7.8 percent, potential class members opted-in); ***Thiebes v. Wal-Mart Stores, Inc.***, Case No. 98-802, 2002 WL 479840, at *3 (D. Or. Jan. 9, 2002) (noting in that case, only about 2.7 percent of the total potential class opted-in). In any event, the Court will be in a better position to determine the manageability at the second stage inquiry when all of the opt-in plaintiffs and their individual circumstances are known to the parties and the Court. See ***Leuthold v. Destination America, Inc.,*** 224 F.R.D. 462, 468 (N.D. Cal. 2004) ("The number and type of plaintiffs who choose to opt into the class may affect the court's second tier inquiry regarding the disparate factual and employment situations of the opt-in plaintiffs, as well as fairness and procedural issues.").

The Court also notes that CFIC has not directed the Court to any case suggesting that a class should not be certified because of its size alone. In fact, the

11

Court's review of the case law reveals that Courts have repeatedly certified classes larger than the putative class in this case.  See ***Casas v. Conseco Finance Corp.***, Case No. 00-1512, 2002 WL 507059, *1–3 (D. Minn. Mar. 31, 2002) (involving a collective action class of approximately 2900 people, despite the fact that the "sole issue is whether plaintiffs fall under one of the [FLSA] exemptions"); ***Thiebes***, 2002 WL 479840, at *1 (noting that the court had conditionally certified a potential class of 15,507 past and present employees, despite the fact that the claims were "inherently individualistic, especially in regard to any determination of an employee's damages").  The Court agrees with Plaintiffs that the ends of justice would not be served by allowing employers to avoid "accountability for their pay practices simply because of the magnitude of their unlawful conduct." (Doc. 13 at 7.)

Accordingly, the Court GRANTS Plaintiffs' motion to expedite and facilitate notice to the putative class of current and former loan officers and orders CFIC to disclose the name, last known address, and telephone number of each loan officer employed by Challenge Financial Investors Corp. ("CFIC") at any time from April 20, 2002 to the present.  Such disclosure shall be made in a data base, spreadsheet or other electronic format if it is maintained in that format by Defendants.  Because the number of potential persons to be identified is

substantial, Defendants are given until **November 14, 2005** to provide the required information to Plaintiffs.

### C. NOTICE FORM

Plaintiffs provided a proposed Notice of Class Action Lawsuit to be sent to CFIC's current and former loan officers in the event that the Court granted their motion. However, CFIC failed to address the content or form of that notice in its responses, instead focusing on the reasons that the motion should be denied. Now that the Court has determined that such notice should be issued, it will provide CFIC with an additional opportunity to respond to Plaintiffs' proposed notice form.

If CFIC objects to the form or content of the notice, it may file a supplemental response, directed <u>solely</u> to Plaintiffs' proposed notice form or providing an alternate notice form for the Court's consideration. Any supplemental response shall be filed on or before **November 1, 2005.** Plaintiffs may, but are not required to, file a supplemental reply directed <u>solely</u> to issues concerning the form or content of any proposed notice. Any such supplemental reply shall be filed on or before **November 14, 2005.**

The Court withholds approval of a form of notice, including the amount of time by which any persons wishing to opt in shall be required to respond, pending

receipt of any of the supplemental briefs allowed by this Order.

**IT IS THEREFORE ORDERED** that Plaintiffs' motion (Doc. 3) is GRANTED in part and TAKEN UNDER ADVISEMENT in part, consistent with the provisions of this Memorandum and Order.

Dated at Wichita, Kansas on this 17th day of October, 2005.

      s/   Donald W. Bostwick
DONALD W. BOSTWICK
United States Magistrate Judge