FOULSTON SIEFKIN LLP
1551 North Waterfront Parkway, Suite 100
Wichita, Kansas  67206-4466
Telephone:  316-267-6371
Facsimile:   316-267-6345
bbyers@foulston.com
jlacey@foulston.com
scounts@foulston.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JEFFREY A. GEER, et al.,                    )
on behalf of themselves and other           )
past and present employees similarly situated,  )
                                            )
                Plaintiffs,                 )
                                            )
v.                                          )   Civil Action No.  05-CV-1109-JTM
                                            )
CHALLENGE FINANCIAL INVESTORS CORP.  )
d/b/a CFIC HOME MORTGAGE and                )
CHALLENGE MORTGAGE, et al.,                 )
                                            )
                Defendants.                 )
_____)


**NOTICE OF DEPOSITION OF DEFENDANT PIGGYBANKER STOCK COMPANY
DUCES TECUM PURSUANT TO FED. R. CIV. P. 30(b)(6)**

TO:     CLERK OF THE COURT

        Donald N. Peterson, II
        Alan R. Pfaff
        Withers, Gough, Pike, Pfaff & Peterson, L.L.C.
        O.W. Garvey Building
        200 West Douglas, Suite 1010
        Wichita, KS  67202

        Scott A. Fisher
        Fowler White Boggs Banker, P.A.
        501 First Ave. N., Suite 900
        St. Petersburg, FL  33901

1

Russell S. Buhite
Fowler White Boggs Banker P.A.
501 E. Kennedy Boulevard, Suite 1700
Tampa, FL  33602

*Attorneys for Challenge Defendant*

Paul E. Donnelly
Scott C. Hecht
Kathleen A. Ryan
Christopher J. Leopold
Stinson Morrison Hecker LLP
1201 Walnut, Suite 2900
Kansas City, MO  64106-2150

*Attorneys for Nations Defendants*

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(6) and 45 and D. Kan. Rule 30.1, plaintiffs will take the deposition upon oral examination, to be recorded by stenographic means and videotape, of defendant Piggybanker Stock Company ("Piggybanker").  Defendant Piggybanker is requested to designate one or more officers, directors, or managing agents, or other person who consents to testify on its behalf concerning the subject matters described on Attachment "A" hereto.  Such person or persons are requested to bring with them to the deposition any and all documents relied on or referred to in preparing for the deposition, and any and all documents relating to the subject matters set forth in Attachment "A," unless such documents have previously been produced pursuant to other requests.  The deposition will commence at a time and on a date to be agreed upon by counsel, and will continue until completed.

Respectfully submitted,

FOULSTON SIEFKIN LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, Kansas 67206-4466

By */s/ Boyd A. Byers*
    Boyd A. Byers    # 16253
      Direct Tel:  316-291-9716
      Direct Fax:  866-738-3152
      bbyers@foulston.com
    Jason P. Lacey    # 19957
      Direct Tel:  316-291-9756
      Direct Fax:  866- 346-2025
      jlacey@foulston.com
    Sophie K. Counts    # 21245
      Direct Tel:  316-291-9771
      Direct Fax:  866-738-3153
      scounts@foulston.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of February, 2007, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Donald N. Peterson, III
    Allan R. Pfaff
    Scott A. Fisher
    Russell S. Buhite
        *Attorneys for Challenge Defendants*

    Paul E. Donnelly
    Scott C. Hecht
    Kathleen A. Ryan
    Christopher J. Leopold
        *Attorneys for Nations Defendants*

 /s/ Boyd A. Byers
Boyd A. Byers    # 16253

Attachment "A"

A. The past and present the corporate structure of Piggybanker Stock Company ("Piggybanker") and its owner(s) and parent, subsidiary, and other affiliated companies, including but not limited to:

1) Piggybanker's Articles of Incorporation and Bylaws;
2) the identity, address and telephone number, position, and responsibilities of all past and present owners, officers and directors, and managers of Piggybanker;
3) the identity of all of Piggybanker's direct or indirect parent, subsidiary, and/or associated or affiliated organizations and all organizations under direct or indirect common control or ownership with Piggybanker and the relationship(s) between or among these organizations;
5) the number of employees employed by Piggybanker;
6) the job titles of those employees;
7) the products and/or services provided by Piggybanker; and
8) the business model(s) or process(es) by which Piggybanker provides those products and/or services.

B. The functions and operations carried out at Piggybanker's corporate office, including but not limited to a description of the accounting, human resources, legal, operations, and any other functions carried out by Piggybanker from said office.

C. The daily job duties and responsibilities of Piggybanker's and/or CFIC's employees, and the manner in which such employees are and have been compensated from January 2002 to the present.

D. From 2002 to the present, the manner in which compensation and payroll decisions are or were made for Piggybanker's and/or CFIC 's loan officers and loan processors, including but not limited to:

1) the decision, and the basis thereof, to pay loan officers and loan processors on a commission only basis, and/or not to pay them overtime, and the person(s) involved in that decision;
2) how each individual loan officer's or loan processor's compensation is determined.

E. The creation, revision, adoption, implementation, interpretation, administration, and communication to employees, of CFIC and/or Piggybanker's policies, procedures, and practices, whether in writing, verbal, or *de facto* from January 2002 to the present, including, but not limited to, the following areas:

1) compensation;
2) calculation and payment of commissions;
3) classification of loan officers as employees or independent contractors;
4) payment errors;
5) time keeping;

1

      6)     overtime pay;
      7)     pay period and business or work hours;
      8)     payment upon termination from employment;
      9)     compensation reviews;
      10)    work schedules and employee attendance; and
      11)    Nations Holding Company 401(k) Plan.

F.     The training of Piggybanker and/or CFIC loan officers and loan processors, and the drafting, revision, interpretation, and administration of policies, procedures, and practices applicable to loan officers and loan processors from January 2002 to the present, including but not limited to the following information set forth and described in CFIC's Branch Manger's Manual and Employee Manual: CFIC corporate structure and job descriptions; office hours; sales development; sales presentation; the application process; and regulatory compliance.

G.     Information relating to Piggybanker's use of computers and information technology, including in the following areas:

      1)     The numbers, types, and locations of computers, (including desktops, lab tops, PDAs, cell phones, etc.) currently in use and/or no longer in use, if such computers were put out of use between January 2002 and the present;
      2)     Past and present operating systems and application software, including dates of use and number of users;
      3)     The named version of the network operating system currently in use, or any such systems used since January 2002 but no longer in use, but relevant to the subject matter of this action, including size in terms of storage capacity, number of users supported, and dates/descriptions of system upgrades;
      4)     File naming and location saving conventions;
      5)     Disk and/or tape labeling conventions;
      6)     Backup and archival disks or tape inventories, schedules, or logs;
      7)     The most likely location of electronic records relevant to the subject matter of this action including, but not limited to, any electronic documents related to loan officers, loan processors, compensation, training, tracking sheets, and Piggybanker's policies and procedures as described above;
      8)     The backup rotation schedules and archiving procedures, including any automatic data recycling programs in use at any relevant time;
      9)     Electronic records management policies and procedures;
      10)    Piggybanker's policies regarding employee use of computers, data, and other technology;
      11)    The identities of all current and former personnel who have had or had access to network administration, backup, archiving or other system operations from January 2001 to the present;

H.     Any and all complaints by any current or former Piggybanker and/or CFIC employees regarding Piggybanker's and/or CFIC's compensation of loan officers and/or loan processors, or failure to pay minimum wages and/or overtime to employees, and any and all

2

  communications regarding said complaints, and Piggybanker and/or CFIC's investigation, response, and remedial action, if any, in response to each such complaint.

I. Piggybanker's policies, procedures, and practices for creating, keeping, filing, maintaining, using, deletion or destruction of records, files, documents, and data relating to its and/or CFIC's employees, including but limited to documents containing the following information: the employee's full name and social security number; current or last known home address, including zip code; sex and occupation; time and day of week when employee's workweek began; regular rate of pay for any week in which overtime is due, including an explanation of the amount and nature of each payment which is excluded from the regular rate; the wage used in determining the employee's straight-time earnings for each pay period; hours worked each day; total hours worked each workweek; total daily or weekly straight-time earnings; total wages paid each pay period; and date of payment and the pay period covered by the payment.

J. Piggybanker's investigation and response to any and all inquiries, complaints, and/or claims (including, but not limited to, claims for benefits) by any current or former Piggybanker and/or CFIC employees regarding the Nations Holding Company 401(K) Plan, including, but not limited to, inquiries, complaints, and/or claims (including, but not limited to, claims for benefits) regarding any employee's ability or eligibility to participate in the Plan.

K. The process, procedure, and practice by which Piggybanker and/or CFIC employees may enroll (or attempt to enroll) in the Plan, including, but not limited to:

  a. Any prerequisites or requirements for employee eligibility to participate in the Plan;
  b. The creation, drafting, revision, interpretation, and administration of CFIC's 401(k) Decline Form (Document CFIC000230);
  c. The process, procedure, and practice by which employees who sign the 401(k) Decline Form can later elect to enroll in the Plan; and
  d. Any enrollment fee, annual service fee, or other administrative or recordkeeping fee that Piggybanker and/or CFIC is required to pay for each employee who elects to participate in the Plan.

L. The amount and frequency of any and all discretionary contributions that Piggybanker and/or CFIC has made to accounts of participants under the Plan from January 2001 to the present, as well as the process, procedure, and practice by which CFIC determines to make such discretionary contributions.

M. The amount and frequency of any and all non-elective and/or matching contributions that Piggybanker and/or CFIC has made to the accounts of participants under the Plan from January 2001 to the present, as well as the process, procedure, and practice by which such contributions are made.

N. The amount of participant elective contributions (whether pre-tax or post-tax) made to the Plan each plan year from the plan year ending on or before December 31, 2001 to the present, as well as the actual deferral percentage (ADP) and actual contribution percentage

3

        (ACP) of all highly compensated employees under the Plan for each such plan year and the ADP and ACP of all non-highly compensated employees under the Plan for each such plan year.

O.        The process, procedure, and practice by which the Plan pays benefits to employees.

P.        Communication to employees, processing, handling, administration, and operation of the Plan. This includes but is not limited to matters such as eligibility, enrollment, Plan elections and election changes (e.g., contribution elections, investment elections, and beneficiary designations), distribution/withdrawal requests and disbursements, loan requests and disbursements, and the distribution, collection, and retention of forms and documents concerning these matters.

Q.        The specific identity, origin, location, content, and significance of all documents identified in Piggybankers's Rule 26 initial disclosures and/or Piggybanker's responses to document production requests by plaintiffs.

R.        The basis and substance of each of Piggybanker's interrogatory answers.