# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JEFFREY A. GEER, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 05-1109-JTM |
| ) | |
| CHALLENGE FINANCIAL INVESTORS ) | |
| CORP. d/b/a CFIC HOME MORTGAGE ) | |
| and CHALLENGE MORTGAGE, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Before the Court are Plaintiffs' Motion for Protective Order Quashing Deposition Notice (Doc. 168) and Motion for Protective Order Quashing CFIC's Second Amended Notice of Taking Depositions (Doc. 206).[1] After a review of the submissions of the parties, as well as discussing relevant issues with the parties during the March 28, 2007 teleconference, the Court is prepared to rule on these two motions.

---

[1] The CFIC Defendants are comprised of Challenge Financial Investors Corp., Harold Barian, Hiram Blomquist, Michael Riley, Joe Ramis, Ken Rach, Trent Williamson, Chris Faoro, Michael Gonzales, Tod Howard, and Piggybanker Stock Company.

## BACKGROUND

A summary of the case is contained in the Court's April 18, 2007, Order regarding Plaintiffs' motion for leave to amend complaint and Defendants' motion to strike jury demand regarding Plaintiffs' ERISA claims. (Doc. 234.) That summary is incorporated herein by reference.

On February 8, 2007, the CFIC Defendants served a notice of depositions on Plaintiffs' counsel requiring all 256 plaintiffs (including 248 opt-in Plaintiffs) to appear in Wichita, Kansas for depositions scheduled to occur between March 19 and April 20, 2007. (Doc. 169 at 2.) The CFIC Defendants filed an amended deposition notice on February 20, 2007. (*Id*.; *see also* Doc. 167.) Plaintiffs moved for a protective order quashing the deposition notice that same day. (Doc. 168.) Defendants responded on March 7, 2007 (Doc. 198), and Plaintiffs replied on March 20, 2007 (Doc. 202).

Defendants filed their Second Amended Notice of Taking Deposition on March 16, 2007. (Doc. 197; *see also* Exhibit A thereto.) The Second Amended Notice scheduled depositions of 272 Plaintiffs to occur between April 9 and April 27, 2007. (*Id*.) Plaintiffs filed their second motion for a protective order on March 23, 2007. (Doc. 206.) Defendants responded on March 28, 2007 (Doc. 208) and Plaintiffs replied on April 4, 2007. (Doc. 220.)

## DISCUSSION

Plaintiffs have moved twice (Docs. 168, 206) for protective orders quashing notices for more than 250 depositions filed by Defendants, arguing that it is "inappropriate" for Defendants to conduct individualized discovery in a collective action. (Doc. 168 at 2.) Defendants respond that the depositions are necessary because of factual disputes regarding the work duties performed by certain opt-in Plaintiffs (Doc. 208 at 3) and whether some of them are exempt under the FLSA by virtue of the outside sales exemption. (Doc. 189 at 5.) Plaintiffs respond that Defendants are attempting to depose *all* Plaintiffs, rather than limiting their questioning to those Plaintiffs involved in the factual disputes. (Doc. 220 at 1.)

Plaintiffs also contend that they have not agreed to the dates or locations noticed which Defendants apparently chose unilaterally. (Doc. 206 at 2.) Defense counsel respond that they informed Plaintiffs' counsel that the depositions would be moved to the last week of April 2007 and received no objection from opposing counsel. (Doc. 208 at 2.) They also contend that Plaintiffs' counsel did not confer with them prior to filing the second motion to quash. (*Id*.) Plaintiffs reply that the relevant communications on this issue preceded the filing of Defendants' second amended deposition notices. (Doc. 220 at 4.)

Plaintiffs also argue that if the depositions go forward, opt-in Plaintiffs

residing outside of Kansas should not be required to travel to Wichita. (Doc. 168 at 2.) Defendants respond that they are entitled to depose all party Plaintiffs and "to do so in this district," because this is the forum in which Plaintiffs chose to file their lawsuit.[2] (Doc. 189 at 1; Doc. 208 at 3.) Plaintiffs reply that the depositions as noticed are not "efficient, cost-effective, or logical," that absent Rule 23 class members are not required to sit for depositions, and if the depositions should occur, they should take place where each Plaintiff resides. (Doc. 202.)

After reviewing the parties' briefs, the Court finds that the cases cited by Defendants are factually distinguishable from the present case. Defendants' primary reliance on ***Williams v. Sprint/United Management Co.*** does not support Defendants' assertion that they are automatically entitled to depose each and every opt-in plaintiff in person. Case No. 03-2200, 2006 WL 1867471 (D.Kan. June 30, 2006) (allowing depositions of certain opt-in plaintiffs in an age discrimination pattern and practice case, in which more than 300 of some 1700 plaintiffs previously had been deposed). ***Williams*** involves allegations of intentional age discrimination, which are, by their very nature, factually intensive, unique, and not

---

[2] Defendants also make several procedural arguments to the effect that Plaintiffs did not timely file their motion to quash and, therefore, the depositions were not automatically stayed. Because the first of these depositions were to have commenced on March 19, 2007, the Court finds this issue at least partially moot. As such, the Court will determine the issue on substantive grounds.

analogous to the claims involved herein.  Further, unlike the present situation, the defendant in *Williams* was not seeking to depose all of the opt-in plaintiffs.  In fact, the Court noted that Plaintiff in that case had not asked the district court to review any rulings concerning the *total number* of opt-in plaintiffs that could be deposed.  Id. at * 1 n. 1.

Defendants cite cases where courts have allowed all opt-in plaintiffs to be deposed; however, several of those cases are not particularly persuasive because the number of opt-in plaintiffs involved were not substantial.  *See e.g.*, ***Ingersoll v. Royal & Sunalliance USA, Inc.***, Case No. C05-1774-MAT, 2006 WL 2091097 (W.D.Wash., Jul. 25, 2006) (34 opt-in plaintiffs); ***O'Brien v. Ed Donnelly Enters.***, Case No. 2:04-CV-00085, 2006 WL 3483956 (S.D. Ohio, November 30, 2006) (10 plaintiffs total, including eight opt-in plaintiffs); ***Rosen v. Reckitt & Coleman, Inc.***, Case No. 91-CIV-1675-LMM, 1994 WL 652534 (S.D.N.Y., November 17, 1994) (50 plaintiffs, including 49 opt-ins); ***Brooks v. Farm Fresh, Inc.***, 759 F.Supp. 1185, 1187 (E.D. Va. 1991) (127 plaintiffs, including 125 opt-in plaintiffs, whose depositions were allowed for the sole purpose of "help[ing] the Court determine whether the named plaintiffs, opt-in plaintiffs, and potential plaintiffs were 'similarly situated' under the FLSA."),  *rev'd on other grounds sub nom.* ***Shaffer v. Farm Fresh, Inc.***, 966 F.2d 142 (4th Cir. 1992).

Further, Defendants appear to have misinterpreted the holding of ***Baden-Winterwood v. Life Time Fitness***, Case No. 2:06-CV-99, 2006 WL 2225825 (S.D. Ohio, August 2, 2006). Defendants contend that the ***Baden-Winterwood*** court required the opt-in notice "to include disclosure that opt-in plaintiffs **will be required** to participate in discovery, including depositions," (Doc. 189 at pg. 3 (emphasis added)), inferring court approval for depositions of virtually all opt-in plaintiffs. In reality, that court simply held that the notice indicate that individuals who opt-in "**may be** required to . . . sit for depositions and/or testify in court." ***Baden-Winterwood***, 2006 WL 2225825, at *2 (emphasis added).

Depositions have been identified as a particular problem in the management of complex cases:

> Depositions are often overused and conducted inefficiently, and thus tend to be the most costly and time-consuming activity in complex litigation. The judge should manage the litigation so as to avoid unnecessary depositions, limit the number and length of those that are taken, and ensure that the process of taking depositions is as fair and efficient as possible.

MANUAL FOR COMPLEX LITIGATION, FOURTH, § 11.45. As a result, the MANUAL addresses the Court's role concerning the control of depositions:

> In exercising its authority to limit depositions, the court should use the information provided by the parties about the need for the proposed depositions, the subject matter to be covered, and the available alternatives. The extent

> to which the judge considers each particular deposition, categories of depositions, or only the deposition program as a whole will depend on the circumstances of the litigation. The judge may, for example, condition the taking of certain depositions, such as those of putative class members, on prior court approval. The judge's involvement in the development of this phase of the discovery plan should be sufficient to establish meaningful control over the time and resources to be expended. Aside from setting appropriate limits, the judge should also be concerned with the time and place of the depositions, including proposed travel and the recording methods.

MANUAL FOR COMPLEX LITIGATION, FOURTH, § 11.451.

The Court is mindful that one of the particular benefits of FLSA collective actions is the "efficient resolution" of the matter. ***Pivonka v. Board of County Comm'rs of Johnson County***, Case No. 04-2598, 2005 WL 1799208 at *5 (D.Kan. July 27, 2005) (citing ***Hoffman-LaRoche Inc. v. Sperling***, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)). In the spirit of efficiency and compromise, Plaintiffs contend that they have made numerous proposals to Defendants in an effort to resolve the matter in a mutually agreeable and reasonably affordable manner. Defendants do not dispute Plaintiffs' stated attempts to compromise. Further, Defendants offer little or no evidence that they have attempted in any substantive manner to compromise with Plaintiffs. This is troubling to the Court and brings into question Defendants' true intention for

7

noticing the 272 depositions at issue.

The taking of depositions is controlled by Fed.R.Civ.P. 30.  Pursuant to subsection (a)(2) of that rule,

> [a] party **must obtain leave of court**, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2) . . . if, without the written stipulation of the parties,
>
>> (A) a proposed deposition would result in more than ten depositions being taken under this rule or Rule 31 by the plaintiffs, or by the defendants, or by third-party defendants.

(Emphasis added.)  Rule 26(b)(2)(A) states that "[b]y order, the court may alter the limits in these rules on the number of depositions and interrogatories or the length of depositions under Rule 30."  Subsection (b)(2)(C) continues by stating

> The **frequency or extent of use of the discovery methods** otherwise permitted under these rules and by any local rule **shall be limited by the court** if it determines that: (i) the discovery sought is **unreasonably cumulative or duplicative**, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; . . . or (iii) the **burden or expense of the proposed discovery outweighs its likely benefit**, taking into account the needs the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

(Emphasis added.)

The Scheduling Orders entered by the Court have consistently stated that "[t]here shall be no more than 10 depositions by plaintiff and 10 by all defendants, collectively, not including depositions of parties."  (Docs. 73, 114, 120, 210 at ¶ II (f).)  Although the Court has contemplated that this case potentially could involve many party depositions, this language in the Scheduling Orders does not give the Defendants *carte blanche* to schedule more than 250 Plaintiff depositions without first seeking leave from the Court or seeking to reach some appropriate procedure for scheduling depositions with Plaintiffs' counsel.

Defendants have done little to convince the Court that *all* 272 depositions are necessary or, if they are necessary, that their proposed manner for taking the depositions is relatively cost-effective.  Having failed to do so, the Court finds that the burden and expense the requested discovery (depositions of every opt-in plaintiff) would impose on Plaintiffs clearly outweighs the likely benefit of such discovery.  The Court agrees with Defendants that a party seeking to avoid or limit discovery based on burdensomeness cannot rely on bare assertions of burden but has the duty to come forward with evidence or affidavits to show the nature and extent of the burden.  *See e.g.*, **Heartland Surgical Specialty Hospital, LLC v. Midwest Division, Inc.**, Case No. 05-2164-MLB-DWB, 2007 WL 950282 at * 4.  While Plaintiffs here have not come forward with specific information about the

9

extent of the claimed burden on the opt-in Plaintiffs, because Defendants have noticed *all* such parties regardless of their location or residence and regardless of the amount of their specific claim, the nature of the burden is rather obvious. The Court is generally aware that certain Plaintiffs' claims are potentially limited in value[3] and that many of the opt-in Plaintiffs are from states that are not contiguous to the State of Kansas. (Doc. 169 at 3) (opt-in Plaintiffs from Florida, Virginia, Texas, Ohio and California). Under the present facts, Defendants have not convinced the Court that oral depositions of all opt-in plaintiffs are necessary or that all such opt-in Plaintiffs should be required to travel to Wichita for their depositions or that there is some logical reason why certain depositions could not occur by telephone.

For the above reasons, the Court will grant both of Plaintiffs' Motions for Protective Orders quashing the deposition notices. (Docs. 168, 206.) By doing so, however, the Court is not holding that all individualized discovery of the opt-in plaintiffs is prohibited. Because it appears that counsel for the parties are not adequately communicating and cooperating to develop a efficient and effective discovery plan in this case, the Court hereby ORDERS that any depositions of opt-

---

[3] Plaintiffs indicate that they provided Defendants with damage calculations for each individual plaintiff during settlement discussions and that the damages for many defendants are "rather modest." (Doc. 202 at 5.)

in plaintiffs or Rule 23 "absent class members" be taken only by agreement of the parties or with leave of Court. The Court anticipates Defendants will move for leave to depose a specified number of these plaintiffs. Prior to doing so, the parties shall be required to confer in a good faith and engage in a concerted effort to reach a agreed procedure for such discovery. In this regard, the parties should give due consideration to the procedures outlined in the MANUAL FOR COMPLEX LITIGATION, FOURTH, § 11.45, *et.seq.* including a plan of sequenced or phased discovery, and cost-saving measures.

If the parties are unable to reach an agreement concerning these discovery issues that complies with the dictates and goals of Fed.R.Civ.P. 1, *i.e.,* a just, speedy and inexpensive determination of the issues, the Court will deal with the number, timing and procedure for depositions of opt-in plaintiffs and/or Rule 23 "absent class members" by ruling on specific motions by Defendants to take certain specified depositions of opt-in plaintiffs and/or Rule 23 "absent class members." The Court will expect Defendants to fully explain the expected nature of the testimony to be obtained by the proposed depositions, how it is reasonably anticipated to lead to the discovery of relevant evidence concerning the claims and defenses in this case and which specific depositions relate to a similar issue such as the outside sales exemption, etc. Likewise, the Court will expect Plaintiffs to

provide specific evidence concerning the proposed depositions to establish any claim of burdensomeness considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation and the importance of the proposed discovery in resolving the issues.

Because of the present deadlines for discovery which are set in the Final Scheduling Order (Doc. 210), if the parties are unable to reach an agreement on these issues, any motion for leave to take specified depositions of any opt-in plaintiffs and/or Rule 23 "absent class members" shall be filed on or before **May 18, 2007**.  Any response shall be filed on or before **June 1, 2007,** and no replies will be allowed.  Any such motion shall contain or have appended to the motion the certification required by D. Kan. Rule 37.2 identifying with particularity all efforts that have been taken by counsel to resolve such disputes.

A hearing is set on **Monday, June 4, 2007 at 1:30 p.m.** in Room 406 U.S. Courthouse, Wichita, Kansas, to hear arguments on any such motions and any other discovery disputes that are outstanding at that time, and to discuss the status of discovery in this case.  <u>Trial counsel for all parties shall appear in person for the hearing.</u>

**IT IS THEREFORE ORDERED** that Plaintiffs' Motions for Protective

Orders quashing Defendants' deposition notices (Docs. 168, 206) are **GRANTED**.

Dated at Wichita, Kansas on this 4th day of May, 2007.

    s/   Donald W. Bostwick
DONALD W. BOSTWICK
United States Magistrate Judge